**INTERNATIONAL BUSINESS MACHINES CORPORATION,
Plaintiff,**

v.

**Anders HARRYSSON, Defendant.**

**No. 00CIV.3125 (CM)(GAY).**

United States District Court,
S.D. New York.

Sept. 29, 2000.

Peter T. Barbur, Cravath, Swaine & Moore, New York City, for International Business Machines Corporation, plaintiffs.

Robert L. Sills, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for Anders Harrysson, defendants.

MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS

McMAHON, District Judge.

This is another in a series of cases brought by Plaintiff International Business Machines ("IBM") against a former senior executive who left IBM and collected incentive compensation (in the form of stock options) pursuant to IBM's 1994 Long Term Performance Plan ("LTPP"). That plan, *inter alia*, provides for forfeiture of the pre-tax proceeds from any exercise of said options if, within six months of exercise, the optionee renders any services for an IBM competitor. In each of these actions, IBM seeks to enforce its right to forfeiture of the incentive compensation because the employee went to work for a competitor within six months after exercising his IBM options. Each separate ac-

tion has its own unique twist. This one is, "The Case of the Sun-y Swede."

The defendant, Anders Harrysson, a Swedish national, was employed by IBM Svenska Aktiebolog (IBM–Sweden), a wholly-owned subsidiary of IBM, from 1984 until mid–1998, when he resigned. During the last two years of his tenure with the company, Harrysson worked in Westchester County, New York, at IBM World Headquarters, although he remained on the payroll of IBM–Sweden. He was the Program Director of Systems Integration Marketing for the Server Group and also served as Intelligence Leader on Sun Microsystems ("Sun") in IBM's Corporate Champion Program, a system by which IBM monitors key competitors and performs long and short term assessments of their competitive threat. Harrysson thus served in a competitor-sensitive position.

In 1995, 1996, 1997 and 1998, Harrysson was granted an incentive stock option award by IBM (the parent), contingent on his signing a form agreement regarding that award. In pertinent part, each such agreement provided that Harrysson had read the 1994 LTPP and agreed to comply with its terms. In 1997 and 1998, Harrysson not only signed such an agreement but made an audio tape recording affirming its terms. Had Harrysson not signed such an agreement, IBM would not have awarded him the stock options.

In each and every such agreement, Harrysson agreed to submit to the exclusive jurisdiction and venue of the federal and state courts in Westchester County, New York to resolve any disputes that might arise out of or relate to the agreement. The agreements themselves were governed by New York law.

On April 28, 1998, Harrysson exercised certain of his options. The complaint does not indicate whether he realized profits or obtained shares.

On or about June 9, 1998, Harrysson advised IBM that he intended to resign from IBM and go to work for Sun, the very company whose program he had been monitoring for IBM. Harrysson returned to Sweden and resigned from IBM on July 31, 1998. In September 1998—within six months of his exercise of the options—Harrysson went to work for Sun in Sweden.

On December 11, 1998, IBM notified Harrysson that it was rescinding his exercise of options and demanded the return of his gains or the shares that he had acquired. Needless to say, Harrysson has not complied with that demand. IBM has therefore filed suit this action.

Harrysson moves to dismiss on the ground of forum non conveniens. For purposes of this motion, he concedes that mandatory forum selection clauses should control absent a strong showing that they ought to be set aside. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). And he also concedes that all but one of the various public and private interest factors for determining forum non conveniens motions—first set forth by the United States Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)—also weigh against granting his motion. However, Harrysson avers that IBM cannot enforce any judgment against him in the United States, because he has no assets here (a proposition that IBM does not dispute at this juncture), and insists that Sweden, where he lives and has all his assets, will not enforce this Court's judgment in view of Sweden's hostility to restrictive covenants and the like. He thus argues that the instant proceeding would be a nullity, rendering the sole factor that weighs in his favor dispositive.

The parties have submitted expert affidavits from Swedish lawyers to demonstrate that trying this proceeding here (1) would be a complete waste of everyone's time and money (plaintiff's position); or (2) would not be a complete waste of everyone's time and money, because the Swedish court might consider the agreements to be valid and enforceable under Swedish law (as "prorogation agreements"), and

would at the very least give some evidentiary weight to a U.S. judgment (IBM's point of view).

There is no question that the issue of a judgment's enforceability against plaintiff is far from clear—indeed, the parties cannot even agree as to which aspect of Swedish law would control on the merits. But this Court has not been directed to any case in which the questionable enforceability of an American judgment, *without more*, was deemed a sufficient basis to dismiss on forum non conveniens grounds. On the contrary, in the only case cited by defendant for the proposition that lack of enforceability in Sweden is enough to mandate dismissal. *Blimpie International, Inc. v. ICA Menyforetagen AB*, 96 Civ. 3082, 1997 WL 143907 (S.D.N.Y. Mar.25, 1997), Judge Sweet of this Court weighed the full panoply of *Gulf Oil* factors and found that most of them pointed in the direction of litigating in Sweden. He did note that the inability to enforce the judgment (which the plaintiff conceded) "weigh[ed] heavily" in favor of dismissal, but he hardly premised his decision on that factor alone. The weight of that single factor was buttressed by the ample weight of such factors as: access to proof, the lack of availability of process to compel third-party witnesses to testify in the United States, and the need to translate almost all of the documentary evidence from Swedish to English. None of those factors is present in this case; indeed, plaintiff concedes as much.

Furthermore, IBM's inability to locate assets against which it can enforce any judgment it may one day obtain cannot be determined for all time to come. It may well be that Harrysson has no assets in the United States today (and for purposes of the instant motion I will accept defendant's representation to that effect). But the life of a judgment is long, and what is true today may not be true tomorrow. Should Harrysson remain employed by Sun, which is also a United States-based company, he may one day have stock options or restricted stock that can be attached in this country. He may acquire other U.S. securities for his investment portfolio. He may one day be required to work in this country for his new employer, which would necessitate his having a bank account and facilitate garnishment of his wages. Or he may obtain assets in another country, one which will more readily recognize and enforce a U.S. judgment.

Where the plaintiff received a demonstrated benefit under the agreement that contains the mandatory forum selection clause, and where every other convenience factor militates in favor of adjudicating the matter here, IBM is free to come before the chosen forum, in the hope that Harrysson will not be willing or able to avoid acquiring assets in a locality where they can fall into an American judgment creditor's hands. Of course, plaintiff assumes a certain risk when it chooses to litigate here, but IBM is obviously aware of that risk and willing to assume it.

This Court is not willing to give every citizen of Sweden—or any other country— a free pass to avoid litigating claims in the United States when it has agreed to do so,[1] as long as the only potential inconvenience to either side is one that the party being inconvenienced—in this case, IBM—prefers to waive. The balance of public and private interest factors weighing in favor of retaining United States jurisdiction, I deny defendant's motion to dismiss. A scheduling order is attached.

---

1. While I express no opinion on the merits of this action, I reject any notion that the defendant did not "agree" to exclusive United States jurisdiction over claims relating to his stock options. Accepting the complaint's allegations as true, Harrysson was not some low-level assembly line worker, but a senior management employee in a sensitive position at IBM. He took the options, and he repeatedly signed agreements in which he acknowledged having read the underlying LTPP and expressly consented—as a condition of getting his options—to abide by its terms.

488

# ATTACHMENT

G:\CM\FORMS\CSMP.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

*I B M*

                    Plaintiff,

                              00 Civ. 3125 (CM)(GAY)

- against-

*HARRYSSON*

                    Defendant.

_____X

## CIVIL CASE MANAGEMENT PLAN

After consultation with counsel for all parties, the following Case Management Plan is adopted. This plan is also a scheduling order pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure.

1. This case is/is not to be tried to a jury.

2. No additional parties may be joined after _____N/A_____.

3. No pleading may be amended after __11/30/00__.

4. All discovery, including expert discovery, must be completed on or before __1/26/01__. (For personal injury, civil rights, employment discrimination or medical malpractice cases only): Plaintiff's deposition shall be taken first, and shall be completed by ___N/A___.

5. A joint pre-trial order in the form prescribed in Judge McMahon's individual rules, together with all other pre-trial submissions required by those rules, shall be submitted on or before __2/23/01__. Responses to in limine motions, if any, are due __3/9/01__. Counsel will be notified of the date of the final pre-trial conference. Cases may be called for trial at any time following the final pre-trial conference.

6. No motion for summary judgment may be served after the date the pre-trial order is due. *The filing of a motion for summary judgment does not relieve the parties of the obligation to file the pre-trial order and other pre-trial submissions on the assigned date.*

7. This case has been designated to the Hon. United States Magistrate Judge _____ *Yanthis* _____. Do not contact Judge McMahon about discovery disputes; go directly to your assigned Magistrate Judge. Discovery disputes will be resolved under the White Plains Magistrates' standing order for Resolution of Discovery Disputes. The Magistrate Judges are not authorized to extend the discovery deadline or trial-ready date, unless the parties consent in writing to trial before a Magistrate Judge pursuant to 28 U.S.C. Section 636(c).

8. This scheduling order may be altered or amended only on a showing of good cause not foreseeable at the time this order is entered. *Counsel should not assume that extensions will be granted as a matter of routine.*

SO ORDERED.

Dated: